IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHANNON S., )
)
Plaintiff, )
)
v. ) 1:24CV299
)
FRANK BISIGNANO, )
Commissioner of Social Security,[1] )
)
Defendant. )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Shannon S. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on September 13, 2021, alleging a disability onset date of April 7, 2020 in both applications. (Tr. at 17, 239-49.)[2] Her applications were denied initially (Tr. at 69-92, 121-30) and upon reconsideration (Tr. at 93-

---

[1] The United States Senate confirmed Frank Bisignano as the Commissioner of Social Security on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

120, 143-58). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 159-90.) On May 17, 2023, Plaintiff, along with her attorney, attended the subsequent telephone hearing, at which both Plaintiff and an impartial vocational expert testified. (Tr. at 17, 43-68.) Following this hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 35-36), and on February 7, 2024, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the [claimant] is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 7, 2020. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 19.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> diabetes mellitus with neuropathy; obesity; hypertension; restless leg syndrome; lumbar facet arthropathy; post-traumatic stress disorder (PTSD); anxiety; depression; and attention deficit hyperactivity disorder (ADHD)[.]

(Tr. at 20.) The ALJ found at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 20-25.) The ALJ therefore assessed Plaintiff's RFC and determined that she could perform light work with the following, additional limitations:

> [Plaintiff is limited to] occasional climbing of ramps and stairs; occasionally kneeling, crawling, crouching, and stooping; occasional balancing with standing

and walking on even terrain; [and] no climbing of ropes, ladders, and scaffolds[.] [She] should avoid concentrated exposure to hazards such as unprotected heights and moving machinery; [can] occasional[ly] use . . . foot pedals; and [can] frequent[ly handle and finger]. [Plaintiff] can understand, remember, and carry out simple instructions[. T]hey can be detailed but not complex; the work should be simple, routine, and repetitive in nature; she can focus on tasks for two hours at a time; she can learn by demonstration in 30 days or less; [Plaintiff can have] no contact with the public [and] occasional contact with coworkers and supervisors; [she is further limited to] routine changes in the work environment.

(Tr. at 25.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff's past relevant work as an accounting clerk exceeded her RFC. (Tr. at 34.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy. (Tr. at 34-35.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 35-36.)

Plaintiff now contends that, in formulating the RFC, the ALJ erred "in assessing the supportability and consistency of consultative examiner (CE) Philip Hatfield's opinions, preventing substantial evidence from supporting the ALJ's decision." (Pl.'s Br. [Doc. #9] at 2.) Dr. Hatfield is a Licensed Clinical Psychologist and addressed Plaintiff's mental impairments in two separate evaluations: the first in December 2021, and the second in July 2022. (Tr. at 652-57, 857-62.) Notably, Plaintiff does not challenge any of the ALJ's determinations or analysis as to Plaintiff's physical impairments, including her diabetes, neuropathy, or back pain. Therefore, the Court considers here only the challenge raised by Plaintiff, specifically regarding the ALJ's treatment of Dr. Hatfield's opinion regarding Plaintiff's mental impairments.

6

Under the applicable regulations for claims filed on or after March 27, 2017,

> [The ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. . . .
>
> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>
> (3) Relationship with the claimant . . . [which includes]: (i) Length of the treatment relationship. . . (ii) Frequency of examinations. . . . (iii) Purpose of the treatment relationship. . . . (iv) Extent of the treatment relationship. . . [and] (v) Examining relationship. . . .
>
> (4) Specialization. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
>
> (5) Other factors. . . . This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. . . .

20 C.F.R. § 404.1520c(a) and (c). The regulations also require decision-makers to "articulate in . . . [their] decision[s] how persuasive [they] find all of the medical opinions . . . in [a claimant's] case record." Id. § 404.1520c(b). Although all of the factors listed in paragraphs

7

(c)(1) through (c)(5) of § 404.1520c should be considered in making this determination, the regulations specifically provide that the most important factors when evaluating the persuasiveness of an opinion are the first two: supportability and consistency. Id. § 404.1520c(a), 404.1520c(c)(1)-(c)(2). Therefore, paragraph (b) further provides that ALJs "will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the] determination or decision." Id. § 404.1520c(b)(2). Express discussion of the remaining factors is not required. See id. § 404.1520c(b)(3); see also Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (explaining that the final rules in § 404.1520c "require our [ALJs] to consider all of the factors" in § 404.1520c(c) "for all medical opinions and, at a minimum, to articulate how they considered the supportability and consistency factors" in determining persuasiveness). In other words, § 404.1520c(b)–(c) defines the "minimum level of articulation" an ALJ must include in her written decision "to provide sufficient rationale for a reviewing . . . court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01; see also Drumgold v. Comm'r of Soc. Sec., 144 F.4th 596, 605 (4th Cir. 2025) ("The ALJ only needs to say, for each "medical source" in the record, how each of the first two factors applies—that is, whether that source's conclusions are supportable by medical evidence and consistent with the rest of the record.").

Here, the ALJ described and discussed CE Hatfield's examination findings and opinions at great length. In particular, the ALJ explained as follows:

> [Plaintiff] was seen for psychiatric consultative examinations in December of 2021 and July of 2022, both performed by Philip Hatfield, PhD. While within these evaluations [Plaintiff] reported that she did very little by way of personal care or household maintenance due to depression-induced fatigue and lack of

8

motivation, these reports are rather inconsistent with her own previous statements made within her September 2021 function report. This report shows [Plaintiff] to have made no significant complaints regarding memory, concentration, understanding, following instructions, or getting along with others[,] and shows generally intact mental functional abilities and activities. [Plaintiff's] own treatment notes also fail to show evidence as to any significantly worsening mental health symptomology. At any rate, the psychiatric consultative examinations were grossly consistent with each other, indicative of generally stable mental functioning. [Plaintiff] presented with a depressed and tearful affect and exhibited somewhat impaired immediate recall, attention, and concentration. She exhibited some slow processing speed on calculations and was further noted to have been functioning in the overall low range of intellectual ability. However, [Plaintiff] further presented as fully orientated with normal speech and exhibited normal thought processes and logical, coherent, and goal directed thought content. Recent and remote memory were generally intact, and she further exhibited adequate judgment and insight. In both evaluations, the examiner diagnosed major depressive disorder, recurrent, severe, without psychotic features.

(Tr. at 31) (internal citations omitted).

Later in her decision, when discussing the medical opinion evidence, the ALJ considered Dr. Hatfield's two medical statements in even greater detail:

In connection with his December 2021 psychological consultative examination, Dr. Hatfield opined [that Plaintiff] appeared to be generally capable of understanding, retaining, and following simple, concrete instructions without difficulty; likely to have mild difficulties utilizing sustained attention to perform routine, repetitive tasks; likely to have significant difficulties forming effective working relationships with co-workers, supervisors, and the general public; and likely to have significant difficulties tolerating the usual stress and pressures of a competitive workplace, including managing changes in the routine[,] but capable of asking for assistance when needed.

In connection with his later July 2022 examination, Dr. Hatfield opined the same with the exception as to his indicating [that Plaintiff was] likely to have moderate difficulties utilizing sustained attention to perform routine, repetitive tasks and likely to have moderate to episodically significant difficulties forming effective working relationships with co-workers, supervisors, and the general public. He further opined that [Plaintiff's] ability to complete a normal workday without disruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods significantly impaired. [Plaintiff's] ability to be aware of normal hazards and

9

> take appropriate precautions including asking for assistance when needed [was] unimpaired[,] and [her] ability to travel to unfamiliar places and/or use public transportation [was also] unimpaired. These opinions are found somewhat persuasive to the extent that they are also suggestive of no more than moderate mental functional limitations with the exception as to Dr. Hatfield's opining significant impairment in [Plaintiff's] ability to perform at a consistent pace without an unreasonable number of and length of rest periods. As above, Dr. Hatfield's own clinical exam findings were not all that unchanged from each other and fail to support this need for such greater restriction[. The increased restrictions] appear[] to have been based more on [Plaintiff's] subjective reports rather than clinical findings. Moreover, as detailed above, [Plaintiff] has received nothing more than conservative medication management with no evidence as to significant psychological complaints[. Her treatment notes] instead note grossly normal mental status exam findings that are consistent with the [RFC] findings herein. Additionally, [Plaintiff's] own reported activities of daily living are consistent with the same.

(Tr. at 32-33) (internal citations omitted).

Plaintiff now contends that "substantial evidence does not support the ALJ's decision because in considering the supportability and consistency of Dr. Hatfield's opinions, the ALJ failed to explain [her] reasoning and failed to resolve inconsistencies in the record due to the ALJ's inaccurate summary of the evidence." (Pl.'s Br. at 15.) In terms of supportability, Plaintiff argues that the ALJ failed to sufficiently explain "why 'stable' findings seven months apart indicate[] less severe mental health limitations than Dr. Hatfield opined." (Pl.'s Br. at 16.) As for the consistency factor, Plaintiff contends that, in finding Plaintiff's description of her symptoms and activities at her consultative examinations inconsistent with those described in her September 2021 Function Report, the ALJ's description "does not accurately reflect the contents of the report." (Pl.'s Br. at 18.) These contentions fail to provide a basis for remand.

As set out above, the ALJ provided myriad reasons for her assessment of Dr. Hatfield's opinions. Notably, the ALJ did not, as Plaintiff contends, determine that "stable" findings undermined Dr. Hatfield's opinions regarding the overall severity of Plaintiff's mental

condition. Rather, the ALJ found that the increased restrictions posited in Dr. Hatfield's 2022 opinion were unsupported by his "own clinical exam findings," which "<u>were not all that unchanged from each other</u> and fail[ed] to support [a] need for such greater restriction" a mere seven months after his initial, less restrictive opinion. (Tr. at 33 (emphasis added).) The ALJ also emphasized, both here and elsewhere in her decision, that, throughout the time period at issue, Plaintiff "has received nothing more than conservative medication management" through her primary care provider "with no evidence as to significant psychological complaints." (Tr. at 33; <u>see also</u> Tr. at 30, 31.) Plaintiff's treatment notes "instead note grossly normal mental status exam findings" (Tr. at 33) with no "objective evidence as to any significant worsening in [her] overall condition" over time (Tr. at 30, 31).

Nevertheless, the ALJ acknowledged that, in the course of her examinations by Dr. Hatfield, Plaintiff exhibited "a depressed and tearful affect," "somewhat impaired immediate recall, attention, and concentration," "slow processing speed on calculations," and "functioning in the overall low range of intellectual ability." (Tr. at 31.) As set out above, Dr. Hatfield concluded that Plaintiff was:

(1) capable of understanding, retaining, and following simple, concrete instructions without difficulty;

(2) likely to have mild difficulties utilizing sustained attention to perform routine, repetitive tasks;

(3) likely to have significant difficulties forming effective working relationships with co-workers, supervisors, and the general public; and

(4) likely to have significant difficulties tolerating the usual stress and pressures of a competitive workplace, including managing changes in the routine[.]

(See Tr. at 32.) The ALJ likewise found, with specific reference to the consultative examination as well as other evidence in the record, that Plaintiff had

(1) "moderate limitation" in "understanding, remembering, or applying information" (Tr. at 23) but "can understand, remember, and carry out simple instructions" (Tr. at 25, 31);

(2) "moderate limitation" in "concentrating, persisting, or maintain pace" (Tr. at 24) so limited to work that is "simple, routine, and repetitive in nature" and can only "focus on tasks for two hours at a time" (Tr. at 25, 31);

(3) "moderate limitations" in interacting with others with "some difficulty relating and working with supervisors, co-workers, and the public" (Tr. at 23), such that she should have "no contact with the public" and only "occasional contact with coworkers and supervisors" (Tr. at 25, 31); and

(4) "moderate limitation" in managing herself and managing stress, but "reported handling changes in routine 'okay'" and was limited to only "routine change in the work environment" (Tr. at 24-25, 31).

These same limitations are likewise reflected in the opinion of the state agency psychologist, Dr. Brooks, who considered Dr. Hatfield's December 2021 evaluation and concluded that Plaintiff could "sustain attention and concentration for short periods of time but would have difficulty maintaining for extended periods of time," and was "able to interact with others in a setting that doesn't require intensive interpersonal demands," and ultimately was "capable of performing [simple, routine, repetitive tasks] in a low stress setting with limited social interaction." (Tr. at 77-78.) Thus, the ALJ's RFC determination addressed all of Dr. Hatfield's 2021 findings and largely adopted the findings of the State agency psychological consultants, which, due to Plaintiff's lack of other psychiatric treatment, were based in large part on Dr. Hatfield's opinions.

Notably, the ALJ found Dr. Hatfield's opinions persuasive "to the extent that they are also suggestive of no more than moderate mental functional limitations" (Tr. at 33), but the ALJ did not find persuasive the increased limitations in Dr. Hatfield's July 2022 evaluation, which opined that Plaintiff's ability to complete a normal workday without disruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods was significantly impaired. (Tr. at 33, 656.) The ALJ found that this aspect of the July 2022 evaluation was not consistent with Dr. Hatfield's prior evaluation, even though Plaintiff's condition was stable and the examinations were largely unchanged. (Tr. at 33, 31.) The ALJ further found that this aspect of the July 2022 evaluation was not supported by the medical evidence, which reflected only conservative medical management, no evidence of significant psychological complaints, and grossly normal mental status exam findings. (Tr. at 33.) Thus, the ALJ's decision clearly explains the assessment and weighing of Dr. Hatfield's opinions, including specifically as to consistency and supportability, and there is substantial evidence in the record to support those conclusions.

As a final matter, Plaintiff challenges the ALJ's characterization of Plaintiff's Adult Function Report, but these contentions fail to alter the above conclusions and provide no basis for remand. Specifically, the ALJ noted that, in the September 2021 Adult Function Report, Plaintiff "made no significant complaints regarding memory, concentration, understanding, following instructions, or getting along with others[,] and shows generally intact mental functional abilities and activities." (Tr. at 31.) A review of the Function Report itself reveals that, when asked to indicate "any of the following items that your illnesses, injuries, or conditions affect," Plaintiff did not place a check mark next to memory,

13

Notably, the ALJ found Dr. Hatfield's opinions persuasive "to the extent that they are also suggestive of no more than moderate mental functional limitations" (Tr. at 33), but the ALJ did not find persuasive the increased limitations in Dr. Hatfield's July 2022 evaluation, which opined that Plaintiff's ability to complete a normal workday without disruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods was significantly impaired. (Tr. at 33, 656.) The ALJ found that this aspect of the July 2022 evaluation was not consistent with Dr. Hatfield's prior evaluation, even though Plaintiff's condition was stable and the examinations were largely unchanged. (Tr. at 33, 31.) The ALJ further found that this aspect of the July 2022 evaluation was not supported by the medical evidence, which reflected only conservative medical management, no evidence of significant psychological complaints, and grossly normal mental status exam findings. (Tr. at 33.) Thus, the ALJ's decision clearly explains the assessment and weighing of Dr. Hatfield's opinions, including specifically as to consistency and supportability, and there is substantial evidence in the record to support those conclusions.

As a final matter, Plaintiff challenges the ALJ's characterization of Plaintiff's Adult Function Report, but these contentions fail to alter the above conclusions and provide no basis for remand. Specifically, the ALJ noted that, in the September 2021 Adult Function Report, Plaintiff "made no significant complaints regarding memory, concentration, understanding, following instructions, or getting along with others[,] and shows generally intact mental functional abilities and activities." (Tr. at 31.) A review of the Function Report itself reveals that, when asked to indicate "any of the following items that your illnesses, injuries, or conditions affect," Plaintiff did not place a check mark next to memory,

concentration, understanding, following instructions, or getting along with others. (Tr. at 296.) In the short answer questions that followed, she noted that she could only pay attention "30-45 minutes" and that she was good at following written and spoken instructions. (Tr. at 296.) Thus, the ALJ's statement was not a misrepresentation of the information in the Function Report. Moreover, as set out above, the ALJ adopted mental RFC findings consistent with Dr. Hatfield's clinical findings and related conclusions in the December 2021 evaluation, and consistent with the opinions of the state agency psychologist, which included limitations relating to concentration, following instructions, and social limitations. Thus, the ALJ's finding that Plaintiff's statements to Dr. Hatfield were "rather inconsistent" with her Function Report appears to play little, if any, role in the ALJ's weighing of Dr. Hatfield's opinions. The inconsistency noted in Plaintiff's statements instead appears to relate primarily to the ALJ's determination that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," a finding which, notably, Plaintiff does not contest. (See Tr. at 26.)[5]

In sum, the ALJ sufficiently explained her analysis of Dr. Hatfield's opinions, and in doing so, the ALJ not only resolved inconsistencies between the two opinions themselves, but adequately explained the role of the supportability and inconsistency factors in her decision,

---

[5] The Court also notes that, while not material to the analysis of Dr. Hatfield's opinions, the ALJ reasonably observed that Plaintiff's reports of her daily activities in her Function Report in September 2021 differed from her report to Dr. Hatfield in December 2021. For example, in her September 2021 Function Report, Plaintiff reported that she would get up and prepare breakfast, attempt chores, lay down for 2 hours, attempt to work on chores, rest again for 2 hours, and have dinner with her family. (Tr. at 292.) She also reported preparing her own meals daily, cleaning, ironing, doing laundry, watering flowers indoors and outdoors, going outside at least once a day, and shopping for groceries and household items. (Tr. at 293-94.) In contrast, three months later in December 2021, she reported to Dr. Hatfield that "[n]ine times out of ten" she just goes back to bed and sleeps six or seven hours all day, does not clean or do anything else, does not put clothes on or shower, and relies on her daughter to cook for her and shop for her. (Tr. at 858-59.) It was not a misrepresentation of the evidence for the ALJ to conclude that those reports were "rather inconsistent." (Tr. at 31.)

as required by 20 C.F.R. § 404.1520c(b)(2). Moreover, with respect to the specific contentions raised by Plaintiff, the Court does not find any material misstatement or misrepresentation of the evidence that would warrant remand.

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #9] is DENIED, that Defendant's Dispositive Brief [Doc. #12] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 30th day of September, 2025.

/s/ Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge